UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Civ No: 1:16-cv-4322
JENNIFER BATTAGLIA

        Plaintiff,

  -against-                                     **COMPLAINT**

GARDEN CITY CATERERS, INC.,                    PLAINTIFF
STEWART MANOR COUNTRY CLUB, LLC,      DEMANDS A
NFRP CATERING, INC.,                               TRIAL BY JURY
NFRP CATERING, INC. d/b/a SEA CLIFF MANOR,
NICHOLAS PELLEGRINI, individually,
FRANK PALADINO, individually,
ROBERT MARTINI, individually,
PETER DOE, individually, and
IAN DINNALL, individually,

        Defendants.
------------------------------------------------------------------------X

    Plaintiff, JENNIFER BATTAGLIA (hereinafter referred to as "BATTAGLIA " or "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants GARDEN CITY CATERERS, INC., (hereinafter referred to as "GARDEN CITY"), STEWART MANOR COUNTRY CLUB, LLC (hereinafter referred to as "STEWART MANOR"), NFRP CATERING, INC. (hereinafter referred to as "NFRP"), NFRP CATERING, INC. d/b/a SEA CLIFF MANOR (hereinafter referred to as "SEA CLIFF"), NICHOLAS PELLEGRINI, individually (hereinafter referred to as "PELLEGRINI"), FRANK PALADINO, individually (hereinafter referred to as "PALADINO"), ROBERT MARTINI, individually (hereinafter referred to as "MARTINI"), PETER DOE, individually (true last name unknown, and hereinafter referred to as "PETER") and IAN DINNALL, individually (hereinafter referred to as

"DINNALL") (hereinafter collectively referred to as "Defendants") upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, together with sexual harassment, hostile work environment, retaliation and wrongful termination by her employers.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. This action involves questions of Federal law.

3. The Court has supplemental jurisdiction under the State laws.

4. On or about April 17, 2015, Plaintiff submitted a Verified Complaint with the New York State Division of Human Rights ("NYS DHR").

5. On or about May 6, 2016, Plaintiff received a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety

(90) days of receiving the Right to Sue Letter.

7. Venue is proper in that the events arose in Nassau County within the Eastern District of New York.

## PARTIES

8. At all times material, Plaintiff is an individual woman who resides in the State of New York, County of Nassau.

9. Plaintiff is married.

10. At all times material, Defendant GARDEN CITY CATERERS, INC. is a domestic business corporation duly existing by virtue of the laws of the State of New York that does business in the State of New York.

11. At all times material, Defendant STEWART MANOR COUNTRY CLUB, LLC is a domestic limited liability company duly existing by virtue of the laws of the State of New York that does business in the State of New York.

12. At all times material, Defendant NFRP CATERING, INC. is a domestic business corporation duly existing by virtue of the laws of the State of New York that does business in the State of New York.

13. At all times material, Defendant NFRP CATERING, INC. d/b/a/ SEA CLIFF MANOR is a domestic business corporation duly existing by virtue of the laws of the State of New York that does business in the State of New York.

14. At all times material, Defendant GARDEN CITY CATERERS, INC., Defendant STEWART MANOR COUNTRY CLUB, LLC, Defendant NFRP CATERING, INC., and Defendant NFRP CATERING, INC. d/b/a SEA CLIFF MANOR (hereinafter

collectively referred to as "The Caterers") were joint employers of Plaintiff.

15. At all times material, The Caterers were engaged in a joint business venture that provided catering services for events and weddings.

16. At all times material, ROBERT MARTINI was and is the Chief Executive Officer of GARDEN CITY.

17. At all times material, MARTINI had supervisory authority over Plaintiff with regard to her employment.

18. At all times material, NICHOLAS PELLEGRINI was and is the Chief Executive Officer of NFRP and SEA CLIFF.

19. At all times material, PELLEGRINI has supervisory authority over Plaintiff with regard to her employment.

20. At all times material, FRANK PALADINO was and is an employee of The Caterers.

21. At all times material, PALADINO had supervisory authority over Plaintiff with regard to her employment.

22. At all times material, PETER DOE was and is an employee of The Caterers.

23. At all times material, PETER has supervisory authority over Plaintiff with regard to her employment.

24. At all times material, IAN DINNALL was and is an employee of The Caterers.

25. At all times material, DINNALL had supervisory authority over Plaintiff with regard to her employment.

## MATERIAL FACTS

26. In or around August 2011, The Caterers hired Plaintiff as a server.

27. At all times material, JAMES POIROT (hereinafter referred to as "POIROT") was and is a Manager of Servers for The Caterers.

28. At all times material, POIROT had supervisory authority over Claimant with regard to her employment.

29. At all times material, PANAGIOTIS MATTHEOS (hereinafter referred to as "MATTHEOS ") was a Manager for The Caterers.

30. At all times material, MATTHEOS had supervisory authority over Claimant with regard to her employment.

31. Shortly after hiring Plaintiff, Defendants scheduled Plaintiff to work shifts with her co-worker SAMANTHA SPENCER (hereinafter referred to as "SPENCER").

32. In or around 2013, Defendants occasionally scheduled Plaintiff to work the same shift as DINNALL.

33. At the same time, DINNALL began to ask Plaintiff to meet him for coffee after work. Plaintiff politely declined DINNALL's invitation.

34. In or around November 2013, Defendants promoted DINNALL to Maître d'.

35. As a result, Defendants transferred DINNALL to work primarily in their Sea Cliff Manor location, at 395 Prospect Avenue, Sea Cliff, New York 11579. Plaintiff primarily worked at the same location.

36. As Maître d', Defendants frequently gave DINNALL the authority to make the schedule for other employees.

37. DINNALL made it clear to Defendants' female employees that DINNALL would provide them the best scheduled hours in exchange for sexual favors.

38. If Defendants' female employees rejected DINNALL's inappropriate and unwelcome sexual advances, such as requests to perform oral sex on him, engage in sexual intercourse with him, or otherwise be forced into sexual activity with him, DINNALL retaliated and cut their hours.

39. Immediately after being promoted, DINNALL began a pattern and practice of making unwelcome and disturbing sexual advances towards SPENCER, Plaintiff, and another female employee, VERONICA TIBURCIO.

40. SPENCER described DINNALL's practice of preying on his female staff members as "using his authority to schedule staff members as a tool to control the servers with."

41. However, DINNALL began to get frustrated by Plaintiff's repeated denials and began to escalate the frequency and manner of his sexual advances.

42. DINNALL informed Plaintiff, "as long as I know I get under your skin, I'm not going to stop."

43. Over the course of a shift, DINNALL attempted to sexually stimulate Plaintiff by touching Plaintiff's arms and shoulders. At no point during Plaintiff's shift would there be a professional or work-related reason for DINNALL to have touched Plaintiff in such a way.

44. In fact, in addition to Plaintiff, on at least one occasion in or around July 2014, DINNALL approached SPENCER and requested that she perform oral sex on him upstairs, in the back room.

45. Shortly thereafter, SPENCER complained to Defendants about DINNALL's inappropriate behavior. However, Defendants failed to take any action to remedy SPENCER's complaint.

46. After DINNALL realized that Defendants would not take any action in response to employees complaints of sexual harassment, on numerous occasions during the summer of 2014, DINNALL requested that Plaintiff join him in a bridal suite at for a threesome after their shift had ended. Plaintiff vehemently declined the offer every time.

47. In fact, on or about July 26, 2014, DINNALL made numerous unwelcome sexual comments towards Plaintiff. DINNALL stated, "If you had a twin I would bang the shit out of her." Moreover, DINNALL informed Plaintiff, "You look like you need the black dick."

48. Plaintiff was shocked and disgusted that her supervisor, DINNALL, would say something so sexually explicit to her.

49. The above comments by DINNALL are merely a few of the many sexually charged comments that DINNALL expressed to Plaintiff and other female employees of Defendants.

50. Defendants discriminated against Plaintiff on the basis of her sex/gender.

51. That same night, DINNALL approached Plaintiff and gave her a hug. Plaintiff repeatedly asked DINNALL to refrain from touching her body. Still, throughout the course of the night, DINNALL continued to attempt to hug Plaintiff as well as rub Plaintiff's shoulders. Several other employees witnessed DINNALL's unwelcome

sexual advances towards Plaintiff that night.

52. DINNALL also made a spectacle of his lewd and reprehensible sexual comments to Defendants' female employees. Throughout the course of that night, DINNALL shouted these lewd comments from the kitchen area to Plaintiff, wherever she was in the catering hall.

53. In fact, DINNALL frequently yelled to Plaintiff that she should be his "baby momma," and accused Plaintiff of thinking about him when she's home in bed, even while she's "fucking her husband."

54. Moreover, DINNALL taunted Plaintiff by pretending to call Plaintiff's husband and ask permission to have sexual intercourse with Plaintiff.

55. Plaintiff was appalled that a staff member - especially a supervisor - would use such vulgar, sexually harassing commentary about women. Plaintiff became unsettled and the work environment turned hostile.

56. At times, DINNALL's sexual harassment became violent in nature, telling Plaintiff that she "needed a good fuck, her hair pulled, and her head slammed."

57. Plaintiff communicated to DINNALL that his inappropriate and unsolicited sexual advances were unwelcome. Plaintiff also directed him to stop making such comments and told DINNALL to stop touching her, as it made her extremely uncomfortable.

58. DINNALL ignored Plaintiff's request to cease the sexual harassment and continued to do so.

59. DINNALL's comment distressed Plaintiff, not only because the harassment was inappropriate, but because DINNALL also threatened Plaintiff's safety and

well-being.

60. Plaintiff became clearly tense and emotionally distressed at the egregious sexual harassment DINNALL forced Plaintiff to endure that night.

61. On or about August 9, 2014, Plaintiff complained to her supervisor, POIROT about DINNALL's unrelenting and unwelcome sexual advances.

62. According to Defendants' Position Statement provided to the New York State Division of Human Rights, POIROT "was the appropriate person to make a complaint to."

63. In response to Plaintiff's complaint, POIROT performed an internal investigation, and over the course of the following week, spoke with DINNALL about the alleged incidents forming the basis of Plaintiff's complaint.

64. Notably, POIROT did not speak with Plaintiff during the course of his investigation.

65. DINNALL verbally denied all allegations.

66. POIROT did not conduct any further investigation and accepted DINNALL's response.

67. POIROT did not reprimand, nor suspend DINNALL.

68. During the investigation, POIROT did not have any discussion with DINNALL about Defendants' policy against sexual harassment, or about sex/gender discrimination.

69. POIROT merely informed DINNALL to "conduct himself in a professional manner."

70. POIROT did not take any measure to ensure that Plaintiff was kept separate from DINNALL while on the premises, and therefore disregarded Plaintiff's evident panic and fear at the idea of working in close quarters with DINNALL again.

71. In fact, according to the NYS DHR, on or about August 16, 2014, Defendants forced Plaintiff to "work at the same work location, at the same time, and under the supervision of, [DINNALL]," despite the fact that POIROT was also on location and could have acted as Plaintiff's direct supervisor that evening.

72. Despite Plaintiff's complaint, POIROT left DINNALL in charge of Plaintiff.

73. Defendants retaliated against Plaintiff for making a complaint of sexual harassment, by placing her back into the supervision of her sexual harasser, DINNALL.

74. That same day, on or about August 16, 2014, DINNALL continued to make vulgar remarks about Plaintiff that were sexual in nature.

75. Defendants discriminated against Plaintiff on the basis of her sex/gender.

76. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

77. Defendants knowingly subjected Plaintiff to further sexual harassment and sexual assault by DINNALL.

78. Defendants knowingly subjected Plaintiff to unsolicited romantic contact with a supervisor, in addition to forcing her listen to gruesome sexual remarks about Plaintiff.

79. On or about August 16, 2014, Defendants constructively discharged Plaintiff.

80. Several days after Defendants constructively discharged Plaintiff, Plaintiff communicated to POIROT that she wanted to return to work but did not want to return to a hostile work environment with DINNALL.

81. However, POIROT instructed Plaintiff that he could not guarantee DINNALL's

absence on her shifts.

82. On or about August 16, 2014, POIROT's supervisor, MATTHEOS, returned from vacation.

83. POIROT communicated to MATTHEOS that POIROT received Plaintiff's sexual harassment complaint about DINNALL, and that Plaintiff had been constructively discharged.

84. Shortly thereafter, DINNALL was suspended while MATTHEOS launched an internal investigation.

85. MATTHEOS concluded the investigation "satisfied that Mr. DINNALL did not act inappropriately," and reinstated him on or about September 19, 2014.

86. As a result of Defendants' actions, Plaintiff felt extremely degraded, victimized, and emotionally distressed.

87. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continue to suffer severe emotional distress and physical ailments.

88. As a result of the acts and conduct complained of herein, Plaintiff suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

89. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

90. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. On or around April 17, 2015, Plaintiff filed a verified complaint with the New York State Division of Human Rights based upon the facts contained herein.

93. On or around May 6, 2016, the EEOC issued a Right to Sue Letter for the Plaintiff.

94. This action is being commenced within 90 days of receipt of the Right to Sue Letter.

95. Title VII states in relevant part as follows: SEC. 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . . .

96. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating against Plaintiff because of her sex and gender, as set forth herein.

97. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

100. "(1) to … discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

101. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to

discriminate against such individual in compensation or in terms, conditions or privileges of employment."

93. Defendant violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff on the basis of her sex/gender.

94. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. New York State Executive Law § 296(7) provides it shall be an unlawful discriminatory practice:

"For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

97. Defendant violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. New York State Executive Law § 296(6) provides that is shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

100. Defendant engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct outlined by the above discriminatory, unlawful and retaliatory conduct.

## INJURY AND DAMAGES

101. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, health insurance costs, medical bills for herself, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.


Dated: New York, New York
August 3, 2016

                                      DEREK SMITH LAW GROUP, PLLC
                                      Attorneys for Plaintiff

                                      _____
                                      Zachary Holzberg, Esq.
                                      30 Broad Street, 35th Floor
                                      New York, New York 10004
                                      (212) 587-0760